Robert F. Brennan, Esq. [S.B. #132449]
**LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**
3150 Montrose Ave.
La Crescenta, Ca. 91214

[818] 249-5291
FAX [818] 249-4329
Email: rbrennan@brennanlaw.com

Attorney for: Plaintiff Chang Yin

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHANG YIN, an Individual;<br><br>Plaintiff,<br><br>vs.<br><br>FRONTIER COMMUNICATIONS CORPORATION, a business entity, form unknown; EQUIFAX INFORMATION SERVICES, LLC., is a business entity, form unknown; EXPERIAN INFORMATION SOLUTIONS INC., is a business entity, and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES:<br><br>1. VIOLATION OF THE FAIR CREDIT REPORTING ACT;<br>2. VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT.<br><br>**JURY TRIAL DEMANDED.** |

Plaintiff alleges:

1. Plaintiff CHANG YIN ("Plaintiff") is a resident of the County of San Bernardino, State of California.

---
COMPLAINT

1

2. Defendant FRONTIER COMMUNICATIONS CORPORATION ("FRONTIER") is a corporation doing business in the State of California, County of San Bernardino.

3. Defendants, EXPERIAN INFORMATION SOLUTIONS INC. ("EXPERIAN") and EQUIFAX INFORMATION SERVICES, LLC ("EQUIFAX"), are business entities, forms unknown, doing business in the State of California as credit bureaus which receive negative credit information about consumers and which then publish such information in credit reports available to its subscribers. Collectively, these defendants will be referred to as "credit bureau defendants" or "credit agency defendants".

4. Plaintiff does not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of Defendants sued herein as Does 1 through 10, inclusive, under the provisions of <u>Section 474 of the California Code of Civil Procedure.</u> Plaintiff is informed and believes and on that basis alleges that Defendants Does 1 through 1-10, inclusive, are in some manner responsible for the acts, occurrences and transactions as officers, directors or managing agents of Defendants or as its agents, servants, employees and/or joint venturers and as set forth in this complaint, and that each of them are legally liable to Plaintiff, as set forth below and herein:

a) Said Officers, directors or managing agents of Defendants personally acted with oppression, fraud or malice with respect to the matters alleged in this complaint;

b) Said officers, directors or managing agents of Defendants personally authorized, approved of, adopted and/or ratified the acts alleged herein or the agents, servants, employees and/or joint venturers of Defendants did so act;

c) Said officers, directors or managing agents of Defendants personally participated in the acts alleged herein of Defendants;

d) Said Officers, directors or managing agents of Defendants personally had close supervision of their agents, servants, employees and/or joint venturers of Defendants;

e) Said Officers, directors or managing agents of Defendants personally were familiar with the facts regarding the matters alleged herein;

f) Said officers, directors or managing agents of Defendants personally failed to investigate the circumstances appertaining to the acts alleged herein. They also failed and refused to repudiate the alleged actions and failed to redress the harm done to Plaintiff. Further, said Officers, directors, or managing agents of Defendants failed and refused to punish or discharge the said agents, servants, employees and/or joint venturers of Defendants, even after learning of the acts of the agents, servants, employees and/or joint venturers of Defendants. Plaintiff will seek leave to amend this complaint to set forth the true names and capacities of said fictitiously named Defendants as enumerated above, together with appropriate charging allegations, when learned.

5. Plaintiff is informed and believes, and thereon alleges that at all relevant times herein each Defendant, whether actually or fictitiously named, was the principal, joint venturer, agent, servant or employee of each other Defendant, and in acting as such within the course, scope and authority of such relationship, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for in this complaint, and any future amended complaint. Further, Plaintiff alleges that each act alleged herein, whether by a named Defendants or fictitiously named Defendants or otherwise, was expressly authorized or ratified, as these terms are in <u>California Civil Code Section</u> 3294(b), by each and every other Defendant herein used, whether named or fictitiously named.

///

# FIRST CAUSE OF ACTION
## [VIOLATION OF THE FAIR CREDIT REPORTING ACT AGAINST FRONTIER, EXPERIAN, EQUIFAX AND DOES 1-10, INCLUSIVE]

6. Plaintiff re-alleges and incorporates all preceding paragraphs as though set forth in full in this cause of action.

7. Plaintiff is a consumer as this term is defined by 15 U.S.C. Sec. 1681a(c) of the Fair Credit Reporting Act. FRONTIER is a "furnisher" as defined by 15 U.S.C. 1681s-2 of the Fair Credit Reporting Act. EXPERIAN and EQUIFAX are "consumer reporting agencies" as that term is defined in 15 U.S.C. Section 1681a (f).

8. On or about May 26, 2016, Plaintiff called FRONTIER to request a new land line phone number due to the amount of cold marketing calls he was receiving. The FRONTIER representative advised Plaintiff that his new number would be activated within five (5) hours. This number was never activated.

9. On or about May 28, 2016, Plaintiff called FRONTIER again to inquire on the status of the new number. FRONTIER apologized for the mistake and issued Plaintiff a new land line phone number. By June 2, 2016, the new landline number was still not activated and the land line phone had no dial tone. Plaintiff now had no phone service.

10. On or about June 5, 2016, Plaintiff called FRONTIER and was told that the service would be active by the end of the day. This did not happen.

11. On or about June 6, 2016, Plaintiff discovered that FRONTIER had cancelled his service on June 2, 2016.

12. On July 13, 2016, Plaintiff called FRONTIER because he received a bill in the amount of $420.33, dated June 7, 2016. Plaintiff immediately called FRONTIER, and was told to disregard the bill, that the early termination fee

would be credited back to him. Plaintiff requested and received confirmation number 599601941.

13. On or about August 19, 2016, Plaintiff called FRONTIER because he received a new bill dated August 7, 2016 in the amount of $456.37. This bill included an early termination fee of $188.47. Plaintiff was told by FRONTIER that there was a pending adjustment that would remove the $456.37 fee. Once the pending amount was approved it would be removed. He was also told he did not have to pay the bill and that the debt would not go to collection or effect his credit score.

14. On or about September 12, 2016, Plaintiff called FRONTIER after he received a bill dated September 7, 2016, in the amount of $456.37 and a letter dated September 1, 2016, which stated that his account was seriously past due and threatened to send him to an outside collection agency and might be reported to the credit bureaus. Plaintiff was transferred to the FRONTIER collection center. The FRONTIER collection center representative said they were just waiting for the pending adjustment to come through. The FRONTIER representative said "she didn't have a way of stopping anything; we just have to wait for the adjustment to come through." Plaintiff expressed his concern over his credit score being damaged by this situation and she assured him that the matter would be kept inside FRONTIER and would never be referred to an outside collection agency.

15. On or about December 27, 2016, Plaintiff's mortgage broker informed Plaintiff that a charge off appeared on his credit profile. Plaintiff was repeatedly misled by FRONTIER not to pay the bill as they were waiting for an adjustment.

16. On or about December 28, 2016, Plaintiff wrote a dispute letter to EXPERIAN and EQUIFAX along with a four-page timeline of events that led to the undeserved charge off.

17. On or about January 18, 2017, Plaintiff received EXPERIAN'S reply to his dispute letter. EXPERIAN reported that their investigation resulted in no change and continued to report the FRONTIER account as Paid, Closed, $456 written off; the Payment History reported him 30 days late in September, 2016, 60 days late in October 2016 and in collections in January 2017.

18. On or about January 30, 2017, Plaintiff received EQUIFAX'S reply to his dispute letter. EQUIFAX reported that their investigation resulted in no change. The account remained in a Paid Charge-Off status with a status 2 code.

19. Plaintiff complied with all requests of each of the Defendants to provide information in order to have the erroneous marks removed from his credit reports. Despite the insistence of Plaintiff, the Defendants, and each of them, failed to correct the errors and failed to undertake sufficient investigations upon being notified of the errors.

20. Defendants, and each of them, willfully violated the provisions of the Fair Credit Reporting Act in *at least* the following respects:

a. By willfully and negligently failing, in the preparation of the consumer report concerning Plaintiff, to follow reasonable procedures to assure maximum possible accuracy of the information in the report;

b. By willfully and negligently failing to correct, after receiving ample notice, information about the Plaintiff which defendants knew, or should have known, was incomplete and/or inaccurate;

c. By willfully and negligently failing to correct and/or delete the incomplete and inaccurate information in Plaintiff's file after conducting an investigation;

d. By willfully and negligently failing to conduct an adequate investigation of Plaintiff's complaints, and by willfully and negligently failing to implement corrective actions once the outcome of such investigations were known, or should

have been known, to the defendants;

 e. By willfully and negligently failing to provide subsequent users of the report with the Plaintiff's statement of dispute or a summary thereof;

 f. By willfully and negligently failing to provide notice to Plaintiff of the furnishing of negative credit information to credit reporting agencies; and

 g. By willfully and negligently failing to provide such information to the credit bureaus indicating the full nature, reasons and extent of Plaintiff's dispute, and thus causing the credit report to the credit bureaus to be inaccurate and incomplete.

 21. As a proximate result of the actions of the Defendants, and each of them, Plaintiff has been damaged in an amount which will be proven at time of trial. As provided under the cited law, Plaintiff is entitled to actual damages, pain and suffering, punitive damages, penalties, costs and attorney fees.

 22. Plaintiff alleges that defendants, and each of them, have willfully violated FCRA with respect to Plaintiff and towards others similarly situated. Specifically, defendants deliberately have inefficient procedures for correcting their credit files, because they know that a certain number of consumers will either be intimidated or too frustrated to continuously fight back against the constant onslaught of collection activities for invalid debts. Defendants, and each of them, know that a certain number of consumers would rather pay than fight, even if the debt is not actually owed. These defendants know that their systems intimidate consumers so they'll pay debts even if not valid or not completely valid. These facts were not disclosed to the Plaintiff and are not disclosed to the borrowing public at large.

///
///
///

## SECOND CAUSE OF ACTION
## [VIOLATION OF THE CALIFORNIA CONSUMER CREDIT REPORTING AGENCIES ACT AGAINST FRONTIER AND DOES 1-10, INCLUSIVE]

23. Plaintiff incorporates all preceding paragraphs as though alleged in full in this cause of action.

24. Within two years prior to the filing of the complaint in this action, defendants FRONTIER and DOES 1-10, Inclusive, both willfully and negligently violated the California Consumer Credit Reporting Agencies Act in at least the following ways:

25. By willfully and negligently furnishing to credit reporting agencies information about the Plaintiff which Defendants FRONTIER and DOES 1-10, Inclusive knew, or should have known, was incomplete or inaccurate.

26. Each of the Defendants FRONTIER and DOES 1-10, Inclusive willfully and negligently failed in their obligations to reinvestigate and correct the derogatory marks in Plaintiff's credit reports. Plaintiff alleges that each of the Defendants FRONTIER and DOES 1-10, Inclusive's policies and practices hinder and obstruct adequate and meaningful reinvestigations, and that each defendant knows of this effect of its policies and practices.

27. As a proximate result of the willful and negligent actions of the Defendants FRONTIER and DOES 1-10, Inclusive, and each of them, Plaintiff has suffered both general and special damages in an amount which will be proven at time of trial. As provided under the cited laws, Plaintiff is entitled to actual damages, loss of wages, damage to credit reputation, pain and suffering, costs and attorney fees. Plaintiff is also entitled to punitive damages and statutory penalties for willful violations of the California Consumer Credit Reporting Agencies Act.

1  WHEREFORE, Plaintiff prays for judgment as follows:

2  1. For general and special damages according to proof at trial;

3  2. For punitive damages;

4  3. For statutory penalties against defendants for each separate violation of
5  the California Fair Debt Collection Practices Act;

6  4. For attorney's fees;

7  5. For costs of suit;

8  6. For such other relief as the court deems just and proper.

10  Dated: February 28th, 2017   LAW OFFICES OF ROBERT F. BRENNAN, A P.C.

By: _____
Robert F. Brennan
Attorney for Plaintiff